IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANSON BATTERSHELL and MARCIA BATTERSHELL,

Plaintiffs,

v.

SACRAMENTO MUNICIPAL UTILITY DISTRICT; CLIFTON LEWIS; JOHN DISTASIO; EDNAN HAMZAWI; MICHAEL WIRSCH; ALLEN ORCHARD,

Defendants.

2:09-cv-02533-GEB-GGH

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Defendants filed a motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) on December 30, 2009. Plaintiffs opposed the motion and attached to their opposition a first amended complaint ("FAC"), indicating how their claims would be amended if they are granted leave to amend. The motion was heard February 22, 2010.

Plaintiffs also filed a "Supplemental Memorandum of Points and Authorities" ("Supplemental Memorandum") two hours before the hearing in which Plaintiffs state they have "obtained a 'right to sue' letter from the California Department of Fair Housing and Employment." (Supplemental Memo. 2:6-8.) Plaintiffs appear to argue that in light of this letter, they should be allowed to amend their complaint to allege a federal claim for "the creation of a hostile work environment." (Id. 3:18-19.) Plaintiffs failed to explain why they did not do what was necessary to obtain a right to sue letter at an earlier date. Further, the timing of their Supplemental Memorandum

suggests that Plaintiffs recognized that their pled federal claims are "immaterial and made solely for the purpose of obtaining [federal question] jurisdiction . . ." Bell v. Hood, 327 U.S. 678, 683 (1946). Since no explanation was provided for their late filing, the arguments presented in Plaintiffs' Supplemental Memorandum are disregarded.

Further, only the portion of Defendants' motion challenging Plaintiffs' federal claims is decided since those claims are the basis of federal question jurisdiction, but do not have sufficient substance to state viable federal constitutional claims. Therefore, those claims will be dismissed, and Plaintiffs' state claims will also be dismissed under 28 U.S.C. § 1367(c).

**I. LEGAL STANDARDS**

When deciding a Rule 12(b)(6) motion to dismiss, "all well-pleaded factual allegations [are accepted] as true, and construe[d] in the light most favorable to [Plaintiffs]." Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960(9th Cir. 2010). "To avoid a Rule 12(b)(6) dismissal, a complaint . . . must plead 'enough facts to state a claim to relief that is plausible on its face.'" Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (2008)(citing and quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

Defendants attached to their motion documents referenced in Plaintiffs' Complaint, which they request be considered. Plaintiffs do not dispute the authenticity of those documents. The documents are a March 20, 2006 Last Chance Agreement entered between Plaintiff Anson Battershell ("Anson") and Defendant Sacramento Municipal Utility District ("SMUD"), a December 5, 2007 SMUD Office Memorandum issued to

Anson, a January 30, 2009 SMUD Employee Discussion Log, and a March 19, 2009 SMUD Employee Discussion Log. (Hamzawi Decl. Ex. A-D).

Generally, on a motion to dismiss only "facts that are alleged on the face the complaint or contained in documents attached to the complaint" are considered. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). However, the incorporation by reference doctrine allows the Court to consider "documents, whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." Id. (internal citations and quotations omitted). Therefore, the referenced documents are considered under the incorporation by reference doctrine.

## II. BACKGROUND

Plaintiffs' challenge employment disciplinary actions to which Plaintiff Anson was subjected, and allege these actions violated their following federal constitutional rights: First and Fourteenth Amendment right to marital and familial association and Fourteenth Amendment right to privacy.

Plaintiffs allege Plaintiff Anson "was required by defendants SMUD and . . . [Distasio]" to sign a March 20, 2006 Last Chance Agreement ("March 20, 2006 LCA") in violation of Plaintiffs' "familial and marital association rights . . . guaranteed by the First and Fourteenth Amendments to the United States Constitution." (Id. ¶ 15). Plaintiffs allege this March 20, 2006 LCA "illegally interfered with and intruded upon Plaintiffs' marital relationship" and therefore is voidable and unenforceable. (Id. ¶¶ 15-16). Plaintiffs further allege that the March 20, 2006 LCA is voidable and unenforceable because Anson "was forced into signing it" "by defendants SMUD and

John Distasio" through "intimidation and illegal threats of potential termination of employment." (Id. ¶ 16)

The March 20, 2006 LCA discusses the finding of an investigator "that Anson sexually harassed and threatened" fellow SMUD employee Jane Agatep ("Agatep"). (Hamzawi Decl., Ex. A). The March 20, 2006 LCA also discusses two days on which Agatep was threatened by Plaintiff Marcia Battershell ("Marcia"), Anson's wife, after Anson was accused of sexually harassing Agatep. (Id.) Specifically, "on January 26, 2006, [Marcia] unexpectedly visited Agatep's [work] cubicle, exhibiting angry and threatening behavior. Later that afternoon [Anson] asked Ms. Agatep to come with [him] to a conference room wherein [Agatep] was subjected to an angry rant by [Anson's] wife on [Anson's] cell phone, including charges that . . . [Agatep] was having an affair with [Anson], threats that [Marcia] would return to the office to 'read [Agatep] the riot act.'" (Id.) "Ms. Agatep finally left the room when she heard [Marcia] ask about [Agatep's] marital status and [asked Agatep] to provide personal information about her relationship with her ex-husband." (Id.) On February 28, 2006, Anson "again requested information from Ms. Agatep about her ex-husband, and she again refused to provide it." (Id.) "Later that same day, [Anson] returned to Ms. Agatep's cubicle and told her that [his] wife was threatening to come into the office, to 'read [Agatep] the riot act.'" (Id.) Anson was disciplined and removed from his "organizational assignment, in order to preclude [him] from having future business need to contact or interact with Ms. Agatepas part of [his] job duties." (Id.) "In addition, [his] continued employment [was] subject to [the LCA]," and Anson was warned that violation of the LCA or "any other District policy" would result in

"additional discipline up to and including termination of . . . employment." (Id.) The March 20, 2006 LCA with SMUD required Anson to:

> instruct [Marcia] not to contact or attempt to contact or communicate with . . . Agatep at anytime and [to instruct] that [Marcia] is not to come to [SMUD] facilities without prior approval of a management official[;] . . . . [and to] take whatever steps are necessary to prevent further contact or interaction between [him]self, [Marcia], or [his] representatives and . . . Agatep.

(Id.)

Plaintiffs also allege that Defendants SMUD, Clifton Lewis, John Distasio, and Michael Wirsch issued Anson a December 5, 2007 SMUD Office Memorandum ("December 5, 2007 OM") "in retaliation for [Anson's] attempts to rectify the violation of [his] rights to familial association caused by the [March 20, 2006, LAC]." (Id. ¶ 18). The December 5, 2007 OM discusses the March 20, 2006 LCA and is based on Anson's conduct occurring since March 20, 2006, that allegedly "breach[ed] the spirit, if not the letter, of [the] agreement." (Hamzawi Decl. Ex. B) The December 5, 2007 OM discusses Anson's request on November 28, 2007, in which he "sought permission for [Marcia] to attend a [SMUD] sponsored employee holiday party," which a supervisor disapproved, and which resulted in an argument between Anson and the supervisor and Marcia contacting the SMUD Board president. (Id.) The December 5, 2007 OM also discusses an incident on September 27, 2007, when Marcia attended an employee safety meeting on SMUD facilities without the approval of a management official. (Id.) Due to these incidents, Anson was instructed to "take whatever steps are necessary to prevent any contact or interaction with Ms. Agatep by [him], [Marcia], or [his] representatives" and to "instruct [Marcia] not to contact or attempt to contact or communicate with Ms. Agatep at ***any*** time." (Id.)(emphasis in the original.) "Furthermore,

[Anson] [was] [instructed] to inform [Marcia] that she [was] barred from [SMUD] facilities, meetings, and employee functions under any circumstances." (Id.) Further, Anson was warned that failure to fully comply with the terms and conditions of the March 20, 2006 LCA and the direction of the December 5, 2007 OM could result in a finding of insubordination and termination. (Id.)

Plaintiffs allege Defendants subsequently issued Anson a SMUD Employment Discussion Log on January 30, 2009, ("January 30, 2009 EDL") "in retaliation for [Anson's] exercise of his religious beliefs[] and . . .for . . . pursuing his rights to familial and marital association in his employment with [SMUD][,]" requiring Anson to "log . . . all his activities at . . . .SMUD and to report those activities to his supervisor." (Id. ¶ 19.) Plaintiffs' conclusory reference to retaliation based on "religious beliefs" is stricken since Plaintiffs have not shown that this conclusory statement concerns any of Plaintiffs' claims.

Plaintiffs allege that Defendants issued another SMUD Employee Discussion Log to Anson on March 19, 2009 ("March 19, 2009, EDL") in which Anson was informed of the need ". . . to make every effort possible to avoid having his wife be on [SMUD] facilities at all times [in large part] to avoid . . . situations in the future and provide the broadest measure of protection for . . . Agatep and for Anson going forward" (Id. ¶ 20; Hamzawi Decl. Ex. D).

This March 19, 2009 EDL discusses an incident on March 11 when Anson received permission to have Marcia meet him on SMUD's premises, yet this meeting "inadvertently took place while Ms. Agatep was also proceeding through the CSC lobby." (Hamzawi Decl. Ex. D). Plaintiffs allege that the March 19, 2009, EDL, "illegally banned

[Marcia] from [SMUD's] facilities without . . . due process being provided to her to present her side with respect to the false accusations that were made against her by another employee of defendant SMUD, Jane Agatep." (Compl. ¶ 20).

Anson also alleges that his Fourteenth Amendment right to privacy was violated when "Paul Kreutz, who is Plaintiff Marcia Battershell's brother and the 'significant other' of defendant SMUD's employee, defendant Arlen Orchard, became aware of what was happening in Plaintiffs Anson and Marcia Batterhshell's case with SMUD and Paul Kreutz stated to the mother of Paul Kreutz and Marcia Battershell that defendant Arlen Orchard had recused himself from the Plaintiffs' case with SMUD. In addition, Paul Kreutz stated to the mother of Paul Kreutz and Marcia Battershell that Plaintiff Marcia Battershell had filed a lawsuit implicating Paul Kreutz and Plaintiff Marcia Battershell's mother." (Id. ¶ 17). Plaintiffs alleged: "It constitutes a gross violation of Plaintiff Anson Battershell's right to privacy and his employment rights that Paul Kreutz even became aware of Plaintiffs' case with SMUD. Plaintiffs allege that Paul Kreutz learned about the details of Plaintiffs' case with defendant SMUD from his significant other, defendant Arlen Orchard, who is employed by defendant SMUD as part of defendant SMUD's legal team." Id ("Kreutz") told his mother, also Marcia's mother, that Defendant Orchard, a SMUD employee and Kreutz's significant other, "had recused himself from the Plaintiffs' case with SMUD" and that Marcia "had filed a lawsuit implicating . . . Kreutz and . . . Marcia['s] mother." (Id. ¶ 17). Plaintiffs contend that "Kreutz learned about the details of Plaintiffs' case with . . . SMUD from . . . defendant [Orchard], who [i]s part of . . . SMUD's legal team. (Id.)

Lastly, Plaintiffs allege that over the last two years, Defendants have interfered with Plaintiffs' marital, familial association, and privacy rights by acts which, "include, but are not limited to, various email letters, written memoranda, other written communications, [and] oral communications . . . ." (Id. ¶ 21.)

## III. ANALYSIS

### A. Plaintiffs' Federal Constitutional Claims

Defendants seek dismissal of Plaintiffs' federal constitutional claims arguing Plaintiffs have failed to plead sufficient facts to state a viable claim. (Mot. 10:2-13:4; 14:24-15:12.) Specifically, Defendants argue Plaintiffs have failed to allege "any facts explaining how [Defendants' actions] interfered with Plaintiffs' marriage" or "family living arrangement." (Mot. 10:2-12:8.) Plaintiffs essentially concede the deficiencies in the Complaint by referring in their opposition to amended allegations in the FAC concerning their marital and familial association federal constitutional claims. (Opp'n 2:10-13:25).

Plaintiffs argue their allegations in the FAC are sufficient to state a claim for violation of their Fourteenth Amendment right to marital and familial association. Those allegations do not support Plaintiffs' position that they have stated cognizable federal constitutional claims.

"The Supreme Court has a long history of recognizing unenumerated fundamental rights as protected by substantive due process, even before the term evolved into its modern usage. But the Court has cautioned against the doctrine's expansion." Raich v. Gonzales, 500 F.3d 850, 862-863 (9th Cir. 2007) (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)).

> [Therefore, a federal court] must . . . exercise the utmost care whenever . . . asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [federal judges]. Furthermore, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States. Substantive due process is ordinarily reserved for those rights that are fundamental.

Brittain v. Hansen, 451 F.3d 982, 990 (9th Cir. 2006)(internal quotations and citation omitted). Plaintiffs have not alleged a cognizable fundamental marital and familial association interest that is protected by the Due Process Clause. Nor have Plaintiffs alleged such an interest in the FAC.

"The Due Process Clause of the Fourteenth Amendment protects individuals against state action that either 'shocks the conscience,' Rochin v. California, 342 U.S. 165, 172 (1952), or interferes with rights 'implicit in the concept of ordered liberty,' Palko v. Connecticut, 302 U.S. 319, 325-326 (1937)." Chavez v. Martinez, 538 U.S. 760, 787 (1994). Here, Plaintiffs seek "to erect a new substantive right upon . . . uncharted terrain of substantive due process when case law, logic and equity do not command us to do so." Harbury v. Deutch, 233 F.3d 596, 605 (D.C. Cir. 2000). Plaintiffs have clearly failed to state a claim for violation of a Fourteenth Amendment right to marital and familial association. Therefore, this claim is dismissed with prejudice since the FAC shows Plaintiffs are unable to state a viable claim.

Defendants also seek dismissal of Plaintiffs' privacy rights claims arguing, *inter alia*, these claims are deficient since Plaintiffs have not alleged what private information was allegedly disclosed. (Mot. 12:1-13:4; Reply 8:6-21.) Plaintiffs do allege what

information was disclosed. Plaintiffs also cite to allegations in the FAC in which Plaintiffs allege that Defendant Orchard, general counsel of SMUD, disclosed "private and confidential information" that Orchard had recused himself from "Plaintiffs' case with SMUD" before Plaintiffs filed the instant federal action, and that Orchard "imparted false and defamatory information to . . . Kreutz that [Marcia] had sued [Kreutz] and [Marcia and Kreutz's] mother." (Opp'n 19:19-20:23.) Defendants rejoin that the referenced disclosure is not disclosure of private information entitling Plaintiffs to a maintain a claim for violation of their Fourteenth Amendment right to privacy. (Reply 8:5-22).

"To violate the right to confidentiality under the Fourteenth Amendment, the information disclosed must be either a ***shocking degradation*** or an ***egregious humiliation*** to further some specific state interest, or a ***flagrant breach of a pledge of confidentiality*** which was instrumental in obtaining the ***personal information***." Johansson v. Emmons, 2010 WL 457335 at *6 (M.D.Fla. 2010)(emphasis added). The federal privacy protection extends only to highly personal matters considered to be "fundamental" or "implicit within the concept of ordered liberty." Cooksey v. Boyer, 289 F.3d. 513, 515 (8th Cir.2002), citing Paul v. Davis, 424 U.S. 693, 713 (1976); See also Baker v. Howard, 419 F.2d 376, 377 (9th Cir. 1969)(stating that plaintiff's allegation "that the actions of defendant police officers . . . invaded his 'constitutionally protected right of privacy' . . . [when they] deliberately released to KAGO a police report containing 'libelous and false statements' suggesting that plaintiff had committed a crime [and which] KAGO then

published . . . to the community" was not "so flagrant that it call[ed] for invocation of the Constitution.").

Here, the information Plaintiffs allege was disseminated by Orchard concerned Orchard's recusal from Plaintiff's SMUD case and false information that Plaintiffs had sued Marcia's mother and her brother. This information does not involve highly personal matters considered to be fundamental or implicit within the concept of ordered liberty, nor does its disclosure constitute either a shocking degradation or an egregious humiliation. Plaintiffs have clearly failed to state a claim for violation of a Fourteenth Amendment right to privacy. Therefore, this claim is dismissed with prejudice since the FAC shows Plaintiffs are unable to state a viable claim.

Since Plaintiffs' federal claims have been dismissed, the Court may sua sponte decide whether to continue exercising supplemental jurisdiction over Plaintiffs' state law claims. See Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state] claim" if "all claims over which it has original jurisdiction" have been dismissed. "While discretion to decline . . . supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the . . . values of economy, convenience, fairness and comity" as delineated by the Supreme Court in United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Acri, 114 F.3d at 1001. Economy does not favor exercising supplemental jurisdiction since Plaintiffs' state claims have not yet been analyzed. Convenience does not weigh appear to favor exercising supplemental jurisdiction since the state court is located close to

where this federal court is located. Further, comity does not weigh in favor of exercising jurisdiction since "[n]eedless decisions of state law should be avoided [ ] as a matter of comity." Gibbs, 383 U.S. at 726; see also Acri, 114 F.3d at 1001 (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims" (internal quotations and citation omitted)). Therefore, Plaintiffs' state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3), and this action shall be closed.

Dated: May 4, 2010

GARLAND E. BURRELL, JR.
United States District Judge